## Chesapeake & Ohio Railway Company v. Ramsey.

(Decided November 30, 1915.)

### Appeal from Pike Circuit Court.

Master and Servant—Safe Appliances—Proximate Cause.—Where a section hand was struck by a handcar and in an action to recover damages for the injuries thereby sustained, sought a recovery on the ground that the brakes on the handcar were defective but failed to prove any attempt to stop the car by the use of the brake, a verdict should have been directed for the defendant upon the ground that the defective brake (if it was defective) was not the proximate cause of the injury.

J. M. YORK for appellant.

J. S. CLINE for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

Reece Ramsey sued the Chesapeake & Ohio Railway Company in the Pike Circuit Court to recover damages for injuries sustained while in the course of his employment as a section-man. He obtained a verdict and judgment in the sum of two thousand dollars, and the defendant appeals.

The proof for the plaintiff shows that on December 23, 1912, Ramsey was working for the defendant as a member of the section crew of a foreman named Gus Dickinson; that the crew had a "lever car," which was propelled by the men who rode thereon by the process

of alternately raising and depressing a lever; the crew also had a "push-car," which was one having no appatus for propelling it.

The men had completed their work of shoveling dirt out of ditches alongside the track, and were on their way to the yards of the company at Shelby Station. The push-car was being pushed along the track in front of the lever-car. The men were riding on the latter. Dickinson, the foreman, had gone on ahead. When they started they were about a mile from the station, and had heard an approaching train. They propelled the lever-car about half a mile, and finding that the train was getting pretty close, they set the lever-car and the push-car off of the track and permitted the train to pass, after which they set the cars back on the track and proceeded. When they reached a point about a fourth of a mile from the station, they saw the train which had passed them standing on the main track ahead of them, whereupon they began to slacken the speed of the lever-car. When this was done, the push-car in front, retaining the momentum of its previous speed, tended to pull ahead of the lever-car, and Ramsey and some of the crew undertook to stop the push-car. This was usually done under like circumstances by the men on the front of the lever-car placing one foot over on the push car in front, leaving one foot on the lever-car, and thus by keeping their legs from spreading, they would be able to hold the two cars together. But on this occasion, for some reason, and without any suggestion from any one, Ramsey stepped off of the lever-car over onto the push-car. The latter had no brake on it, and Ramsey stepped from it to the ground for the purpose of pulling back on it with his hands and stopping it in that way. The day was snowy and wet, and Ramsey said that as he stepped off and took hold of the push-car, he slipped and fell, and the lever-car ran upon him and injured him.

The plaintiff sought a recovery upon the ground that the defendant company was negligent in failing to provide a sufficient brake on the lever-car; but, while there was some proof to the effect that the brake in question was defective, the plaintiff failed to offer any evidence whatever showing that the defective brake was the proximate cause of the injury.

He testified that he was "fifteen or twenty or thirty feet" from the lever-car at the time he slipped and fell.

Two of his witnesses fixed the distance at "about one-half a rail," or "fifteen to twenty feet," another (Tom Adkins, Jr.) fixed it at about twenty-five feet.

Plaintiff was asked: "If this lever-car had had the proper brake, state whether or not it could have been stopped before the time you were pulled down, before it ran over you?" He answered, "Yes, sir." His witness, Tom Adkins, Jr., was asked: "State whether or not at the time you saw the plaintiff fall, and the distance the lever-car was from him, if there had been a good brake on the car, if it could have been stopped in time to have prevented the injuries?" and the answer was: "It was a snowy time, and I don't know."

Plaintiff offered no evidence other than the above to show that the defective brake was the proximate cause of his injuries, if this can be considered as offering to show such fact. There was no evidence offered by plaintiff as to the speed at which the lever-car was moving at the time he slipped and fell, nor as to the time in which such a car equipped with proper brake, running at a given rate of speed, could be stopped. Nor did plaintiff offer to show the grade or condition of the track at the time and place of the injury; nor that any attempt was made to use the brake and that it failed to perform.

There was, therefore, a total failure upon the part of the plaintiff to show that the negligence of the defendant in failing to repair the brake of the lever-car, was the proximate cause of the injuries sustained by him, and the trial court should have granted the defendant's motion made at the close of the plaintiff's evidence, to direct a verdict for it.

But counsel for appellee argues that there were two distinct negligent acts on the part of the appellant, relying on the evidence introduced by the defendant to establish the second one, contending that one Melvin Adkins (whom appellee says was left in charge of the section crew by its foreman, Dickinson) "hollowed to appellee to catch the push-car and keep it from running into the train and that after appellee took hold of the car with his hands, he (Adkins) pumped, as he says, 'two licks with the lever-car' and propelled it over appellee's body."

This evidence of Melvin Adkins, relied on by plaintiff as sufficient to show negligence, was brought out by defendant in the examination of the witness at the close of his examination in chief, and is as follows:

"Q. (by defendant) You say he jumped on the car? (Objected to—overruled—except.) A. I am not certain; but I think we pumped one or two licks on the lever to get to the push-car. Q. What distance was he from you at the time he jumped off the push-car? A. I guess about ten feet. Q. You say there was nothing the matter with the brake at all? A. Not as I know of. Q. You could stop it as you could other hand-cars? A. Yes, sir."

This witness was not cross-examined on the pumping of the lever-car, and the above is all he said about it. This "pumping," if done at all, was done before Ramsey jumped off of the push-car and before he was in any dangerous position; and we are unable to understand how this could be negligence.

Melvin Adkins testified that the lever-car was running at the usual speed, but there is no evidence as to what the usual speed was. If the car was running ten miles per hour, it would have traversed 14 2/3 feet per second; if it was fifteen feet from Ramsey when he fell, Adkins would have had about one second in which to grasp the situation and to act and bring the car to a stop; if it was twenty feet, he had less than one and a half seconds; if thirty feet, he had about two seconds in which to stop.

Plaintiff offered no evidence as to the time required to stop a lever-car; and the only evidence as to the distance in which it could be stopped was that of the defendant's witnesses. If the plaintiff were to adopt that evidence as his own, his case would fail, for all of the defendant's witnesses say that a lever-car with a perfect brake, on a dry track, could not be stopped within less than thirty-five feet when running at the usual rate of speed, and on a wet track, within less than fifty to a hundred feet.

When the facts in the case are all brought out, there may be sufficient evidence to warrant the submission of the case to the jury; but there is no evidence in the present record fixing any negligence upon the defendant as the proximate cause of the plaintiff's injuries.

Considering the evidence before us as a whole, the injury seems to have been the result of an unavoidable accident, without any negligence upon the part of any one; and if, upon another trial, it is substantially the same as it was on the first trial, the court should direct a verdict for the defendant.

Judgment reversed.